JOSEPH BADGER *versus* THE PRESIDENT, &c. BANK OF CUMBERLAND.

If the presiding Judge is not requested to give any instructions in reference to the nature and effect of a written instrument, introduced in evidence at the trial, the omission to do so is no valid ground of exceptions, unless the liability of the party is to be determined solely by the legal construction to be put upon it.

A sale and delivery of a vessel may be good between the parties, so as to change the property, without a bill of sale or other instrument in writing; and accounts kept of the proceeds of the vessel and of the repairs prove an use and possession, which is at least equivalent to a formal delivery at the time of the transfer.

No distinction is made in the evidence applicable thereto between the sale and delivery of a vessel and any other personal property. What is competent in the one case is admissible in the other. And it is not required, that the contract of sale of either should be proved to have been made in express terms, but may be inferred from the conversations and acts of the parties.

When one is called upon as the supposed owner of a vessel for the payment of a charge upon it, the vessel having formerly belonged to another, the possession of the vessel and the receipt of her earnings are admissible, although not conclusive evidence upon the question of title.

The authority of an agent of a corporation need not be proved by record or writing, but may be shown by acts and the general course of business.

The cashier of a bank is the regularly authorized agent thereof, and whatever is done by him in that capacity, within the sphere of his duties, is the act of the bank.

ASSUMPSIT for money paid and money had and received. All the evidence written and parol, saving that there was no copy of the bond, is found in the exceptions, but the facts in the case sufficiently appear in the opinion of the Court. The trial was before TENNEY J.

The counsel for the defendants seasonably objected to the proof of any declarations or sayings of any officer of the Bank. After a statement of all the evidence the exceptions conclude thus : —

" The counsel for the Bank contended, that the only interest which it had in the ship was by virtue of Nutter's bond, which gave it no right to the earnings of the ship, and subjected them to no liability to the plaintiff; that it had only the right to

reduce one third part of the ship to specie, and therefrom take the sum, to which they were entitled, by the bond ; that the money received by it, June 4, 1845, was not received as earnings of the ship, but as money from Nutter, paid by the hand of the plaintiff.

" Whereupon the Judge, not being requested, omitted to instruct the jury, whether the bond was or was not a bottomry bond ; and did instruct them, that the rights and liabilities of the Bank might depend upon other evidence than the bond alone ; that it was competent for Nutter and the Bank, after the execution of the bond, to enter into a contract by which Nutter should divest himself absolutely, of all his interest in one third of the ship to the Bank ; or give it the right to receive that proportion of her earnings, without proceedings on their part in admiralty upon the bond ; and that a bill of sale under seal, registered at the Custom house, was not the only evidence of title in a ship ; that an ownership therein could be acquired by a parol contract, as well as in other personal property ; that if the Bank treated one third part of the ship as belonging to it, in its dealings with the plaintiff, as ship's husband, or owner of the other part, that fact was for their consideration on the question of title ; that if the Bank claimed to be entitled to one third part of the earnings of the ship, in its own right to such earnings, and called upon the plaintiff for them, as ship's husband, and the money was paid June 4, 1845, with a promise of the cashier at the time, that the Bank would refund the excess, if it should turn out on a settlement with the master or payment of other bills, that too much was paid, or if the payment was made, on the condition expressed at the time, of such a contingency, the plaintiff could recover such excess ; and whether the payments, which might be made to reduce the amount belonging to the Bank thereafter were to be limited to services rendered before the time to which the accounts presented were brought down, to 4th June, 1845, or to a later period previous to the date of the writ, would depend upon the agreement, or condition ; but if the Bank was absolute owner of one third part of the ship, the plaintiff

would not necessarily be limited by a time short of the date of the writ, but might recover for moneys paid in that behalf afterwards before the date of the writ; that the acts of Moulton, the President of the Bank, touching the insurance of the ship, and the Bank's interest in the vessel, as testified to by the witnesses, was evidence in the case, on the question, whether the Bank was owner of one third of the ship or claimed to be entitled to one third of her earnings; that the entry in the Bank's blotter, June 4, 1845, without the name of Nutter, was also a circumstance for the jury upon these questions. The verdict was for the plaintiff.

"To which instructions and rulings, the counsel for the defendants excepted."

*Augustine Haines*, for the defendants, argued in support of the following propositions: —

1. The presiding Judge should have instructed the jury, that the bond introduced was a bottomry bond, and that the rights and liabilities of the Bank depended upon that alone. Abbott on Shipping, Story's Ed. 125. The plaintiff introduced this bond, and he is bound by its legal effect. The general ownership remains in the bottomry borrower. 5 Robinson's R. 218; 2 Sumn. 157.

2. The instruction, "that the rights and liabilities of the Bank might depend upon other evidence than the bond alone; that it was competent for Nutter and the Bank, after the execution of the bond, to enter into a contract by which Nutter should divest himself absolutely of all his interest in one third of the ship, to the Bank;" was erroneous upon the evidence in the case.

3. The defendants contend, that the instruction, "that if the Bank treated one third part of the ship as belonging to it, in its dealings with the plaintiff, as ship's husband, or owner of the other part, that fact was for their consideration upon the question of title," was also erroneous.

By the general maritime law, a transfer of a ship should be evidenced by a bill of sale. *Weston* v. *Penniman*, 1 Mason, 306. But if a bill of sale is not absolutely necessary for the

transfer of a ship, the contract to sell, to give title, must be accompanied by delivery of possession. 8 Pick. 86; 16 Mass. R. 336 and 401; 7 Johns. R. 303. The Bank never took possession.

4. The instruction, " that the acts of Moulton, the President of the Bank, touching the insurance and the Bank's interest in the vessel, as testified to by the witnesses, was evidence in the case, on the question whether the Bank was owner of one third part of the ship, or claimed to be entitled to one third . of her earnings," was erroneous.

One may insure his equitable interest in property, while the legal title is in another. 3 Mass. R. 133; 13 Mass. R. 61 and 267.

5. The instruction was erroneous, " that the entry in the Bank's blotter, June 4, 1845, was also a circumstance for the jury upon these questions," as to title.

6. If this were a mortgage of the ship, and not a bottomry bond, the instructions were equally erroneous. In the construction of the instrument, the Judge should have instructed the jury, that inasmuch as the plaintiff had introduced the bond as evidence of the defendant's interest in the vessel, the rights and liabilities of the Bank should depend upon that alone, and not upon other evidence. If the Bank were mortgagee of one third of the ship, it was not liable to the plaintiff for any thing furnished to the ship. 8 Johns. R. 159.

*Fessenden, Deblois & Fessenden* argued for the plaintiff; and took these among other positions.

By law part owners of vessels are entitled to the earnings of such vessels in proportion to their ownership, and as a corresponding obligation, they are bound to pay their proportions of all expenses incurred in the employment of such vessels. 6 Greenl. 220; Cowp. 639; Abbott on Ship. (2 Amer. Ed.) 103.

This part ownership in vessels may be proved by other evidence, than by a bill of sale. It may be proved by parol. *Bixby* v. *Franklin Ins. Co.* 8 Pick. 86; *Taggard* v. *Loring,*

11 Mass. R. 340; *Lamb* v. *Durant*, 12 Mass. R. 57; 4 Cranch, 48; 7 Johns. R. 308; 4 Pick. 300.

But the money is recoverable on another ground, entirely independent of any ownership of the vessel. The money was paid on condition, that the Bank was to pay back their proportion of the bills that came in.

And there is still another ground. The Bank, as appears from all the evidence, claimed this money as the owner of one third part of the ship; and as such owner is bound to repay it, when found due. *Hall* v. *Marston*, 17 Mass. R. 580. The Bank is estopped from saying afterwards, that it will not meet the liabilities of the one third of the ship. *Mason* v. *Waite*, 17 Mass. R. 563; *Emery* v. *Hersey*, 4 Greenl. 412; 17 Mass. R. 557.

Nor does the fact, that the Bank is a corporation, vary the rules of evidence, in proving its liability. 7 Greenl. 118; 7 Greenl. 76; 17 Mass. R. 498; 7 Cranch, 300; 16 Maine R. 439; 12 Wheat. 64; 8 Pick. 178; 24 Maine R. 490.

The President and Cashier of the Bank being executive agents of the Bank, and acting within the scope of the legitimate purposes of the institution, their acts and doings bind the Bank, and furnish evidence which may be used against it. 7 Cranch, 306; 1 Peters, 70; 16 Maine R. 448; 1 Cowen, 513; 12 Johns. R. 231; 14 Johns. R. 118; Story's Agency, c. 6, § 114, 115; 17 Mass. R. 490; 24 Maine R. 490; 6 Cowen, 90.

The opinion of the Court, SHEPLEY J. being a stockholder in the Bank and taking no part in the decision, was drawn up by

TENNEY J. — This action is for the recovery of the amount of the disbursements on account of one third part of Ship Hermitage, which the plaintiff contends was the property of the defendants, or which for the time was used and treated by them as such. The plaintiff was the owner of the residue of the ship and was ship's husband.

To prove the title of the defendants, there was introduced

evidence of a former ownership by one Nutter ; a bond from Nutter to the Bank, dated Sept. 1, 1842, recorded in the city registry of Portland, Nov. 5, 1844, to secure the payment of a note made by the obligor to the Bank ; also parol evidence of an agreement between Nutter and the Bank, that he was to receive a third part of the earnings of the ship for two years, and that afterwards they were to go to the defendants towards his debt ; that he paid the interest on the note for a certain time ; and took the earnings till the expiration of the two years, when he informed the officers of the Bank, that he could pay no more interest on the note ; and though he gave no formal notice of abandonment of the vessel to them, he had received none of her earnings since that time. It was in proof that the plaintiff made repairs on the ship after Nutter relinquished his claim to her earnings ; that at the request of the President accounts were rendered to the Bank from time to time containing charges against the ship for repairs, and the expenses attending her voyages, and credit given of her earnings. One of these accounts was settled between the plaintiff and the cashier of the Bank on June 4, 1845, and on the payment by the former of a balance due on account of the one third, which had belonged to Nutter, the latter gave him a receipt therefor in full for the net earnings in his official capacity ; and evidence was introduced by the plaintiff of an agreement between them, that if on a final settlement of the matters appertaining to the ship, it should be found, that the Bank had received a sum exceeding one third of the net earnings, of which the plaintiff expressed some apprehension, the excess was to be refunded. It appeared also, that the President caused insurance to be effected upon the ship to the amount of $2500, for the Bank ; and on being called upon at another time by authority of the plaintiff to know, if he would cause insurance to be made upon the ship from Liverpool home, he replied, that they had risked her from Mobile to Liverpool, and he thought they should risk her home. Upon a memorandum made by the cashier, upon the books of the Bank, there was an entry of the sum received of the plaintiff

as one third of the earnings of the ship Hermitage, and certain items being deducted from the amount, for insurance, a balance was found, which balance the cashier testified was applied to Nutter's note. Before this action was commenced, an account containing the items of the claim in suit was presented at the Bank by the plaintiff's agent, and a letter from the plaintiff to the defendants demanding payment of the same. Both were delivered to the President, who said he would lay them before the Directors; and afterwards they were returned by the president, who said, "tell Capt. Badger, we pay nothing back."

The Judge, not being requested to give any instructions in reference to the nature and effect of the bond introduced, the omission to do so, is no valid ground of exceptions, unless the liability of the defendants is to be determined solely by the legal construction to be put upon it. The plaintiff did not claim to hold the defendants accountable upon the matter disclosed in that bond alone, but it was evidently introduced as one of a series of agreements between the parties thereto, with a view to show the full relations, which had existed and did then exist between them.

In this country a sale and delivery of a vessel may be good between the parties, so as to change the property, without a bill of sale or other instrument in writing; and accounts kept of the proceeds of the vessel, and of the repairs prove an use and possession, which is at least equivalent to a formal delivery at the time of the transfer. *Bixby & al.* v. *Franklin Ins. Co.* 8 Pick. 86; *Lamb* v. *Durant*, 12 Mass. R. 57; *Taggard* v. *Loring*, 16 Mass. R. 340.

No distinction is made in the evidence applicable, between the sale and delivery of a vessel and any other property. What is competent in one case is admissible in the other. It is not required that the contract of sale of either should be proved to have been made in express terms, but it may be inferred from conversations and acts of the parties, like other contracts. *Waite* v. *Gibbs*, 4 Pick. 300. Where one is called upon as the supposed owner of a vessel for the payment of a

charge upon it, the vessel having formerly belonged to another, the possession of the vessel and the receipt of her earnings, unexplained, is a kind of proof of ownership, which may be highly satisfactory, and is proper for the consideration of a jury upon the question of title. Such evidence is by no means conclusive. It may not always be of so unequivocal a character as to amount to proof of ownership; or it may be qualified or entirely controlled by other evidence, but by no rule of law can it be excluded from the case.

Were the acts of the President of the Bank inadmissible? The Court say in the case of the *Bank of Columbia* v. *Patterson*, 7 Cranch, 299. " It would seem to be a sound rule of law, that whenever a corporation is acting within the scope of the legitimate purposes of its institution, all parol contracts made by its authorized agents are express promises of the corporation; and all duties imposed on them by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action would lie. " Grants and proceedings beneficial to the corporation are presumed to be accepted, and slight acts on their part, which can be reasonably accounted for, only upon the supposition of such acceptance are admitted as presumptions of the fact. If officers of the corporation openly exercise a power, which presupposes a delegated authority for the purpose, and other corporate acts show, that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed." *Bank of U. States* v. *Dandridge*, 12 Wheat. 64. The authority of an agent of a corporation need not be proved by record or any writing, but may be shown by acts and the general course of business. *Warren* v. *Ocean Ins. Co.* 16 Maine R. 439.

The cashier of a Bank is the regularly authorized agent thereof, and whatever is done by him in that capacity, within the sphere of his duties, is the act of the Bank. *Burnham* v. *Webster*, 19 Maine R. 232; Story's Agency, sect. 114.

The receipt by the cashier of the Bank of the money paid

by the plaintiff and the entry of the same on their books were acts of the Bank, which they cannot controvert. The payment was for their benefit, and was received by their authorized agent acting within the scope of his agency. The items of the entry show that the Bank had adopted the acts of the President touching the insurance of the vessel. This was a recognition of the President's authority to take proper measures for the security and the collection of the debt from Nutter. The money which was received by the Bank was upon the settlement of the account which was rendered at the request of the President. His acts, in taking the letter of the plaintiff with the account claimed in this action, and afterwards returning them with the refusal to pay any thing back, were facts in the case, which were properly submitted to the jury, under the instructions given.

The rulings and instructions were not legally erroneous; and the *Exceptions are overruled.*