IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF SOMERSET,

ARGUED MAY TERM, 1848.

---

## THOMAS RICHARDSON *versus* IDDO KIMBALL.

The property in a vessel may be legally transferred without a bill of sale or other written evidence of it. In such case, there must be proof of an agreement to sell and purchase, and of a valuable consideration also, when the title is asserted against creditors of the vendor.

An absolute conveyance of personal property cannot be legally proved in a court of common law, to have been made only to secure the purchaser for liabilities assumed, and be good against the creditors of the vendor.

A delivery of a vessel, *in port at the time of sale*, is as necessary to perfect the title against creditors, as it is when any other description of personal property is sold.

A sale of goods, made by an officer on execution, must be regarded as a legal transfer of the property, although he may not have kept it four days after the taking on the execution and before the sale.

Repairs made upon a vessel by the owner, after he became the purchaser, cannot be set off against her earnings prior to the purchase.

A sale of a vessel by an officer on execution, conveys nothing but the vessel as it existed at the time of the sale.

If a part of a vessel be attached, and the officer takes a receipt therefor, and she is sent to sea, the receipter is not liable to the officer for any earnings of the vessel.

If a bill of sale is in the form of an absolute conveyance, and is made without any other consideration than to secure the purchaser for liabilities assumed, it is still valid so far as it does not come in conflict with the rights

of creditors of the vendor. And such sale will transfer all the right and interest of the vendor to the purchaser, although the property was under attachment at the time of the sale.

Although a bill of sale be made on the Lord's day, one who is not a party to the sale, and who has no interest in the property, which is the subject of contest, cannot prevent a recovery by the purchaser, by showing that he violated the statute in acquiring his title.

The purchaser of personal property under attachment, may maintain an action against the attaching officer, for an injury done by him to it after the purchase.

And the purchaser may waive the tort, and recover, in assumpsit, any money in the hands of the tort-feasor, as the fruits derived from the wrongful act.

An agent is liable for misfeasances to the owner of the property injured, whether he acted by the direction of his principal or not.

THESE two actions, the one trover for one half of schooner Emeline, and one quarter of schooner Tremont; and the other assumpsit for the earnings of the same vessels between the time of the defendant's attachment on the writ, and the sale on execution. These actions appear to have been tried in September, 1843. At that term an agreement was made by the parties of which a copy follows : —

" Supreme Judicial Court, Somerset Co. Sept. Term, 1843.

" Thomas Richardson *v.* Iddo Kimball.

" In this case a nonsuit was entered by consent, which is to be confirmed or set aside, and such judgment rendered as the Court may order, upon the report of all the evidence in the case, the Court to draw all inferences from the evidence which a jury might legally. The plaintiff's affidavit is admitted so far as the statements are competent evidence. All the evidence offered in the other case tried in this Court, at this term, so far as competent, is to form a part of this case, reference to be had to the bill of exceptions in that case, for the recital of the evidence, and such other evidence is to be introduced as either party may choose to take in depositions, giving legal notice to adverse party, touching the transfer of property from John Thompson to the plaintiff.

" Henry C. Lowell, defendant's attorney.

" John S. Abbott, plaintiff's attorney."

From the arguments of counsel it appears, that there was a bill of exceptions filed in the action of assumpsit by the defendant, and a motion by the plaintiff to set aside the verdict because the verdict was for too small a sum. The opinion of the Court was at the June Term, 1849.

No copies of the case came into the hands of the Reporter. The facts, as understood by the Court, sufficiently appear in the opinion.

The written and printed arguments of the counsel, were mainly in relation to the facts of the case; but still the portions bearing on the questions of law, are too full to admit of publication.

Some of the points made and authorities cited will be given.

J. S. Abbott, for the plaintiff, in the action of trover, said, that on Oct. 27, 1836, the vessels were the property of John Thompson, who on that day gave bills of sale of the portions claimed, to the plaintiff. The validity of that sale cannot be inquired into, nor impeached by the defendant, unless he was at the time a *bona fide* creditor of John Thompson, and unless he has obtained a valid judgment, honestly and without fraud or collusion ; and legally caused the vessels to be sold upon the execution issued on such judgment.

The judgment was obtained fraudulently upon a note which had been paid.

The sale by the officer to the defendant, on the execution, was illegal, and no title passed thereby. Four days were not allowed between the time of the taking and of the sale, without including Sunday. Stat. 1821, c. 60, § 5 ; 4 Pick. 354.

The sale to the plaintiff should take precedence of that to the defendant, if the latter was legal. If the bills of sale were lost or destroyed, that would not render the sale invalid.

No grand bill of sale of a vessel is necessary here, as in England. Even a parol bill of sale is sufficient.

It is sufficient, if possession be taken within a reasonable time after the sale. 4 Mass. R. 661; 8 Mass. R. 287 ; 15 Mass. R. 528 ; 9 Pick. 4 ; 2 Metc. 350 ; 2 Kent, 501.

In relation to the action of assumpsit, it was said, that if the title of the plaintiff was prior to that of the defendant, and valid against creditors, as it was insisted was the fact, then we are entitled to recover the earnings of the portions of the vessels belonging to us.

But even were it otherwise ; and were the attachment and sale on execution sufficient to pass the vessels to the defendant still we are entitled to recover in this action. The defendant, has not shown the slightest ground for retaining the earnings, until the sale on execution. The attachment gave him no such right. The title, as between the plaintiff and Thompson, was unquestionably in the plaintiff. And that is all which is necessary for our purpose.

*H. C. Lowell,* for the defendant, said that he held and should endeavor to maintain the following legal propositions. The statement of them, alone, without the arguments thereon, is all which can be given.

1. The defendant's title is prior in point of time, taking its inception from the time of the attachment on Saturday morning, Oct. 29, 1836 ; while the plaintiff's title, such as it is, takes its date from Sunday, Oct. 30, 1836, when the bills of sale were made and executed, but falsely dated as of Thursday, Oct. 27, 1836. The citations were — 1 Shep. Touchst. 70, 71 ; 2 H. Black. 259 ; 1 N. H. Rep. 9 ; 1 Greenl. Ev. 302, 303, and notes.

2. The Sunday bills of sale, the only evidence of the plaintiff's title, are void as against the defendant, having been executed and delivered in direct contravention of the laws of the land, and of the positive provisions of the statute of Massachusetts, c. 50, § 1, prohibiting all manner of labor and business under a penalty. *Pattee* v. *Greely,* Law Rep. Vol. 1, No. 6, p. 253 ; *Webster* v. *Abbott,* Law Rep. Vol. 1, No. 3, p. 117 ; 26 Maine R. 469.

3. But if these bills of sale had been made on Thursday, instead of Sunday, still there is no sufficient consideration in law, to uphold them. They were all absolute bills of sale, and were given to secure the plaintiff against a contingent lia-

bility as Thompson's indorser. It is universally true, that such contingent liability is not sufficient consideration for an absolute bill of sale, as against creditors; as against such it is void. 4 N. H. Rep. 176; 3 N. H. Rep. 415; 2 Greenl. 87; 19 Maine R. 167.

4. But suppose, that the bills of sale of Thursday had never been destroyed, they could not avail the plaintiff as against Kimball, because no delivery had been given, or possession taken until after the attachment. 14 Martin, 97; 7 Martin, 318, and 707; 12 Mass. R. 57; 17 Mass. R. 110.

5. Four week days were allowed between the taking and the sale on execution. But were it otherwise, the plaintiff is not in a situation to contest the regularity of the officer's proceedings on his execution. As to the title to the property, the return of the officer is conclusive. 26 Maine R. 197; 24 Maine R. 395; 26 Maine R. 195; 1 Fairf. 265.

6. In turning to the action of assumpsit, there would seem to be but little to do, for whether the plaintiff's title be good or bad, he cannot maintain this action. If bad, he can sustain no action whatever, and if good he will recover in the appropriate action of trover, the value of the property at the time of the conversion, and interest thereon. And nothing can be clearer than the fact, that if there has been a conversion of the property by the defendant, it dates by relation back to the time of his attachment, Oct. 29, 1836, before any earnings accrued. The plaintiff has a full and adequate remedy in his action of trover, and the law hates multiplicity of actions. 21 Pick. 559; 24 Maine R. 343.

7. There is no privity between the parties, and assumpsit will not lie.

8. The defendant is clearly entitled to judgment in his favor on the verdicts rendered. In issues presenting mixed questions of law and fact, the Court will send the cause to the jury under such instructions as shall give them an opportunity to settle the facts in the case; and then the Court will render such judgment, as their findings and the whole record before the Court may require. Stephen's Pledge, (5 Am. Ed.) 92, 94, 104,,

120, 143; 2 Roll. Ab. 99; 1 Wils. 63; 5 Pick. 181; 24 Maine R. 25; 18 Johns. R. 14; 16 Johns. R. 348; 17 Pick. 252; 12 Pick. 324; 2 Stark. Ev. 83; 10 Pick. 281; 3 Fairf. 15; 14 Maine R. 395; 23 Maine R. 345; 8 Taunt. 413.

9. The most favorable construction for the plaintiff, if the bills of sale are not to be regarded as utterly void, is to regard them in the light of mortgages, subject to a prior attachment; and if so to be considered, then the plaintiff's liability or debt is the principal, and the mortgage the incident, and therefore on payment of the debt or discharge of the liability, the property revests in the mortgager, without canceling the mortgage, or resale, or redelivery, the mortgagee no longer having any cause of action against any one, and the mortgager is restored to all his rights and remedies, the property continuing, however, under and subject to the attachment. 2 Pick. 206; 1 Porter, 423; 2 Greenl. 322; 23 Maine R. 345.

10. The jury were instructed, "that they were bound to return a verdict for the plaintiff, who was entitled to recover as trustee for Thompson's creditors." This was erroneous in fact and in law. From a fair view of the evidence, there is not the slightest pretence, that the plaintiff acted for any creditor; and no pretence in any state of the case, that the law would hold the plaintiff a trustee.

The eleventh and twelfth positions relate to the motion for a new trial.

*J. S. Abbott*, for the plaintiff, replied.

At the June Term, 1849, in this county, the opinion of the Court, SHEPLEY C. J. and TENNEY, WELLS and HOWARD Justices, was delivered by

SHEPLEY C. J. — The first of these cases is an action of trover, brought to recover the value of one half of the schooner Emeline and of one quarter of the schooner Tremont. At the term of this Court holden in this county in the month of September, 1843, a nonsuit was entered by consent. At the same time the counsel made and signed a written agreement, that the nonsuit might be confirmed, or set aside and such

judgment rendered, as the Court might order upon certain evidence named, " and such other evidence is to be introduced, as either party may choose to take in depositions, giving legal notice to the adverse party, touching the transfer of property from John Thompson to the defendant." Difficulties have arisen between the parties and their counsel, and the cases, after delay of several years, have been recently submitted to the Court for decision upon the testimony originally introduced and since taken, accompained by written or printed arguments.

It has not been considered necessary to decide, whether all the testimony could be properly received under the agreement, without a motion to have the nonsuit set aside for newly discovered evidence ; for if a part of it were to be now excluded a further and longer continued contest might be expected under a petition or motion, and the result will be the same, whether a part only or the whole of the testimony be received.

John Thompson was the owner of the shares of those vessels since claimed by these parties, each asserting a title derived from him.

The plaintiff claims by virtue of two bills of sale, bearing date on October 27, 1836 ; and the defendant by virtue of an attachment made on October 29, 1836, and a sale made by the sheriff on execution on June 10, 1837.

1. The testimony of John Thompson, the former owner, introduced by the defendant, and that of his son, John H. Thompson, introduced by the plaintiff, clearly proves that bills of sale of the shares of the vessels now claimed by each party were made on October 27, conveying them to the plaintiff. That those bills of sale were regarded as defective, and that others were signed and substituted for them on Sunday, October 30; and that those formerly executed were subsequently destroyed. The testimony of William A. Wellman, stating that he wrote the parts in manuscript on the day of their date, is not necessarily in conflict with their testimony; and if it were to be so regarded, it is apparent, that he had no recollection at the time, when his testimony was taken, of the day when he wrote them, but relied upon a

former affidavit, made by him on August 6, 1837, stating that fact; and whether that rested upon any other foundation than the dates of the bills of sale is quite uncertain. While John H. Thompson states, that he heard the plaintiff and his father speak at different times of the transaction, as he states it, and once as late as the week before the trial. Both of the Thompsons speak of the facts as within their own knowledge and recollection, and they must have testified falsely, or have been under some unaccountable influence or mistake, if their testimony does not truly state those occurrences. The plaintiff does not appear to have complained, that their testimony in this respect was not correct, while he did complain, that John Thompson in other respects made incorrect statements, and that he had documents, by which he could convince him of it.

The counsel for the plaintiff contends, that if the bills of sale be regarded as taking effect only on a day subsequent to the attachment, yet they are only one kind of proof of a sale, which is proved without them, to have been made on October 27.

The property in a vessel may be legally transferred without a bill of sale, or other written evidence of it. In such cases there must be proof of an agreement to sell and purchase, and of a valuable consideration also, when the title is asserted against creditors of the vendor.

In this case there is no proof of such an agreement, except so far as it is found in the bills of sale. The title depends upon them as a conveyance taken to indemnify the plaintiff for liabilities assumed for John Thompson; not upon a purchase and payment made by the plaintiff. There is therefore no title established by proof of a sale made at any time before the bills of sale now produced were signed and delivered.

2. The bills of sale purport to convey those shares of the vessels absolutely and not as security for liabilities assumed. There is no satisfactory proof of any payment made by the plaintiff to John Thompson, or of the discharge of any claim, or that Thompson was relieved from payment of the paper on

which the plaintiff had become his surety or indorser. An absolute conveyance of personal property cannot be legally proved in a court of common law to have been made only to secure the purchaser for liabilities assumed, and be good against the creditors of the vendor. *Gorham* v. *Herrick,* 2 Greenl. 87 ; *Coburn* v. *Pickering,* 3 N. H. Rep. 415. *Whitaker* v. *Sumner,* 20 Pick. 399.

3. It appears from the testimony of Elkanah Spear, Jr. that the vessels were at East Thomaston when he made the attachment, on October 29, and that they had been there from three days to a week before that time. There is no proof of a delivery from Thompson to the plaintiff before the attachment. If they had been at sea at the time of sale, the purchaser's rights would have been preserved by taking possession within a reasonable time after their arrival in port. A delivery of a vessel in port at the time of sale is as necessary to perfect the title, as it is when any other description of personal property is sold. *Brinley* v. *Spring,* 7 Greenl. 241 ; *Ludwig* v. *Fuller,* 17 Maine R. 162.

4. The counsel for the plaintiff contends, that the defendant did not obtain a prior title by relation to the time of the attachment, because the sale made by the officer was not legal, the Lord's day having been reckoned as one of the four days between the seizure and sale on execution. But it has been decided, that the legal title will pass by virtue of such a sale. *Tuttle* v. *Gates,* 24 Maine R. 395.

5. It is further contended, that it appears by the newly discovered testimony, that the defendant's judgment against Thompson was obtained by fraud or collusion, when nothing was due.

That judgment was recovered upon a promissory note made by Thompson on Nov. 23, 1832, for $1800, and payable to the defendant on demand with interest. John Thompson testified on the trial of this action, that "he was still owing Mr. Kimball a large sum of money besides the amount named in the execution." No explanation of the testimony since

discovered can be obtained from him, for he had deceased before that time.

William Morton testifies, that he was formerly Thompson's clerk, that he finds an entry made in his handwriting in a book formerly kept by Thompson as a record of bills and notes payable, of a note payable to the defendant, dated Nov. 23, 1832, numbered 52, payable on demand, for $1800, marked "settled per W. B." These letters he explains as denoting the waste book. He does not recollect any thing respecting that entry or the occasion of it. He states that there appear to have been large dealings between the defendant and Thompson after the date of that note, and large amounts of money paid. The waste books of Thompson appear to have been destroyed by his son after his father's decease, among many other papers esteemed to be of no value. The entry made by Morton can be received as legal testimony only for the purpose of impairing the confidence reposed in the testimony of John Thompson. An entry made by order of the debtor in his own books, can of itself have no effect to impair the rights of the creditor, or to show that his debt has been paid. If the testimony of John Thompson respecting the debt due from him to the defendant were disregarded, the defendant would continue to be the holder of the note unimpaired by any other testimony, and that would be sufficient to enable him to recover a judgment upon it. It is not difficult to perceive, that Thompson might, if now alive, be able to explain that entry and all their subsequent dealings respecting their vessels and the repair of them, consistently with the truth of his testimony. However this may be, there is no satisfactory proof, that the defendant's judgment was recovered by fraud or collusion, or that it was not recovered upon a demand justly due to him. *The nonsuit is confirmed.*

THE second case is an action of assumpsit brought by the plaintiff against the defendant to recover the amount of money received by the defendant as the earnings of one half of the schooner Emeline, and of one quarter of the schooner

Richardson v. Kimball.

Tremont from the time of their attachment on October 29, 1836, to the time of their purchase by the defendant at the sheriff's sale on June 10, 1837.

It appears that the defendant receipted to the officer for those shares of the vessels and permitted them to continue to pursue their accustomed course of business, and that he received their net earnings. The objections made to the plaintiff's right to recover the amount of money thus received by the defendant are to be considered.

The first is, that the expense of repairing them, between the time of the attachment and the time, when they were lost at sea, exceeded the amount of their earnings, during the same time. If this be so, it constitutes no defence. Repairs made upon them, after the defendant became the purchaser, were made upon his own vessels, and for his own benefit. The earnings received before, or earned before he became the purchaser, belonged to the owner of the vessels.

2. It is said that such earnings were purchased and passed to the defendant with the vessels.

The officer had no legal right to sell any thing but the shares of the vessels, as they existed at the time of sale. If he attempted to do so, he could convey nothing else. It does not satisfactorily appear, that he made any such attempt.

3. That if the defendant be liable he is liable only to the officer, whose agent and keeper he was.

The defendant, by producing the vessels to the officer for sale, performed all his duty as a receipter for them, and was discharged from his contract. The officer in his official character, can have no claim upon the money in the hands of the defendant. No suit has been commenced against the officer, for any alleged misfeasance in permitting them to go to sea, and be subjected to use while under attachment, and no such suit can at this late day be maintained against him.

4. That the plaintiff acquired no title either to the vessels or their earnings, by his bills of sale.

A conveyance of real or personal estate, may be invalid as it respects the vendor's creditors, and yet valid as it respects the

parties and others not claiming rights as such creditors. In this case although the bills of sale were in form absolute, conveyances made without other consideration than to secure the plaintiff for liabilities assumed, they were valid so far, as they did not come in conflict with the rights of the creditors of the vendor. The title of Thompson, was not divested by the attachment. Until a sale on execution, the debtor has full power to sell or dispose of the property attached, so far as he can do it without disturbing the possession or rights acquired by the attachment. A purchaser can legally acquire and take all the rights of the debtor in that property, subject to those acquired by the attachment.

This right to sell and to purchase cannot be affected by knowledge or the want of it, that the property is at the time under attachment. Those rights arise out of the fact, that the debtor still continues to be the owner of the property, with the legal right to convey it, and not out of his knowledge of the actual condition of the property at the time.

The rights of the seller and purchaser as it respects their claims upon each other, may be greatly affected and varied by the fact, that the sale was made with or without a knowledge, that the property had been attached. But as it respects the right of the purchaser to obtain all the benefit possible from others under such a sale, there would seem to be no doubt, unless the vendor's title or right to sell, can be considered as destroyed by an attachment. That his title or right to sell is not destroyed by an attachment is fully established by the decided cases. *Blake* v. *Shaw*, 7 Mass. R. 505 ; *Fettyplace* v. *Dutch*, 13 Pick. 388. In the latter case the sale and purchase was made with a knowledge of the attachment upon the property. Such knowledge appears to have been exhibited rather to destroy than to establish the validity of the sale. In the opinion of the Court, it does not appear to have been considered as a fact of any importance, further than it might have a bearing upon the proof of delivery. If the plaintiff acquired nothing by the bills of sale, then Thompson while alive, and his legal representative since his decease, would be the person

legally entitled to the earnings of the shares of the vessels. If on the contrary those shares passed from Thompson to the plaintiff, so far as that title was not defeated by the attachment, it remains with the plaintiff accompanied by all the fruits flowing out of it. There can be no doubt, that the plaintiff by those bills of sale, would have been entitled at any time before the shares were sold, to have taken possession of them, and to have claimed all their earnings, if the defendant had failed to recover judgment, or if his attachment had been dissolved by payment of his debt or otherwise. And if those shares had sold for more than sufficient to pay the debt and costs, the plaintiff would have been entitled to recover of the officer, any balance remaining in his hands, and to recover the earnings of those shares from the persons who had received them.

The mere fact, that no such balance remained, cannot affect the plaintiff's right to recover for that, which does remain, and to receive whatever benefit he can obtain from his purchase not destroyed by the enforcement of the attachment. The idea, that the plaintiff's purchase was wholly defeated by the sale of the whole of those shares upon the execution, arises out of the position, that the plaintiff acquired by his purchase nothing but the property in those shares, while he had in fact acquired before their sale, not only such right of property, but a right to all their earnings, subject to have those rights defeated or diminished so far, as they could be by the proceedings under the attachment.

5. The objection that the bills of sale were executed and delivered on the Lord's day cannot prevail. One who was not a party to that sale, and who has no interest in the property, which is the subject of contest, cannot prevent a recovery by showing, that the plaintiff violated some statute provision in acquiring his title. If such were the law, the owner of goods introduced in violation of the revenue laws could not recover their value from a trespasser.

6. A further objection is interposed, that the officer was guilty of misfeasance in permitting the vessels to go to sea and to be used in their accustomed business, and that the earnings

received by the defendant are the fruits of that tortious act; and that the plaintiff cannot maintain assumpsit against the officer, and if he could, he cannot against his agent and servant.

If the purchaser of personal property could not maintain an action against an officer for an injury done to the property after he became the owner, no one could, for the original owner could not recover for an injury done to the property after he ceased to be the owner of it. Any person injured by the misconduct of an officer may maintain an action against him and recover damages for such injury. *Tuttle* v. *Gates*, 24 Maine R. 395. And he may waive the tort and recover by an action of assumpsit any money in the hands of the tort feasor as the fruits derived from the wrongful act. *Webster* v. *Drinkwater*, 5 Greenl. 319; *Whitwell* v. *Vincent*, 4 Pick. 449; *Berley* v. *Taylor*, 5 Hill, 577. The law is well settled that an agent is liable for misfeasances to the owner of the property whether he acted by the direction of his principal or not. *Perkins* v. *Smith*, 1 Wilson, 328; *Bush* v. *Steinman*, 1 B. & P. 410; *Fairbrother* v. *Ansley*, 1 Camp. 343. The defendant being thus liable, the plaintiff may waive the tort and recover for the fruits of that tort the amount received by the defendant in money.

There is a motion filed by the plaintiff to have the verdict in his favor set aside on the ground, that the jury made a mistake in calculating the amount received by the defendant, or decided against full evidence showing that amount. Upon an examination of the testimony it appears, that the verdict was rendered for a less sum than the amount actually received according to the testimony.

*The verdict is set aside and a new trial granted.*