## Case No. 12,565.

SCUDDER v. CALAIS STEAMBOAT CO.

[1 Cliff. 370.] [1]

Circuit Court, D. Maine. April Term, 1860. [2]

SALE—BUILDING SHIP—WHEN TITLE PASSES—POSSESSION AND SALE BY AGENT—REGISTER.

1. Under a contract for building an entire vessel, no property vests in the party for whom the vessel is built, until she is ready for delivery, and has been approved or accepted by such party; but that general rule does not prevail where the vessel is constructed under the superintendence of the party for whom she is built, or his agent, and payments for her, based upon the progress of the work, are to be made by instalments as the work is done. In such cases the person for whom the vessel is built is regarded as the real owner.

[Cited in Clarkson v. Stevens, 106 U. S. 505, 1 Sup. Ct. 207.]

[Cited in Jones v. Wilder, 28 Minn. 245, 9 N. W. 711; Stevens v. Shippen, 28 N. J. Eq. 528.]

[1] [Reported by William Henry Clifford, Esq. and here reprinted by permission.]

[2] [Reversed in 2 Black (67 U. S.) 372.]

2. Delivery of a vessel by the builders of the hull thereof to one as agent of the real owners, of itself vests no title in such agent, although the builders had no knowledge of the capacity in which the vessel was received by him. Unaccompanied by a written conveyance, such delivery must be understood as vesting the title in the real owners, and the taking of a bill of sale by such agent four months afterwards could not have the effect to divest the owners' title, and vest it in the agent.

3. In the United States the title to a vessel may pass by delivery under a parol contract.

4. Of itself, the register is not evidence of property, unless confirmed by auxiliary circumstances to show that it was made by the authority or with the assent of the person named in it, and who is subject to be charged as owner.

5. A purchaser of a vessel from a person holding the same in trust for the real owners, having notice of the trust, is in no better situation than the seller.

This was a bill in equity, brought by the complainant [Charles Scudder] as administrator of the estate of John Van Pelt, formerly of San Francisco, in the state of California, deceased, to compel the corporation respondents to convey to him, as such administrator, all such title as they might have acquired, or claimed to have acquired, in thirteen-twentieth parts of a certain steamboat called the Adelaide, and to account to him for the same proportion of the net profits of the steamer during all the time she had been in their employ. John Van Pelt died in San Francisco on the 29th of September, 1853; and in the month of October following, Horace P. Janes, Richard Chenery, and Frank Johnson were duly appointed administrators of his goods and estate, by the court of probate for the county of San Francisco. Having fully administered the estate, they were discharged from the trust, October 30, 1854. During this period the steamer in question was in the process of construction in New York; and the complainant alleged that the administrators appointed in California never assumed any control over her, or in any way made themselves liable for her, and never authorized any person to make sale of her. The complainant, as administrator appointed in the county of Cumberland, in the state of Maine, alleged that the intestate in his lifetime, during the month of May, 1853, at San Francisco, employed one William W. Vanderbilt to make a draft for a steamer of this description; to proceed to the state of New York as his agent, and there to contract for and superintend the building of the same; that being then concerned with others in navigation on the waters of California, he did not wish it to be publicly known that he was building a steamer to be used on those waters, and therefore instructed his agent that the contracts for the hull and engines should be made in the agent's name, and that the steamer, when completed, should be so enrolled at the custom-house. When completed, she was to be sent to California, and there wholly transferred to the principal, unless the agent should become interested in

.her to the extent of two-twentieth parts. Pursuant to this arrangement the decedent, in the month of September, 1853, agreed with one Richard Chenery of San Francisco, that he should become the owner of seven-twentieth parts of the steamer, four twentieths for himself and three twentieths for one Richard M. Jessup, who also lived in San Francisco. Chenery accordingly paid him seven twentieths of twenty thousand dollars first advanced; and to provide further funds for the construction of the vessel, they made a .mortgage of certain other steamers to certain bankers, as a security for letters of credit to the amount of sixty thousand dollars. Forty thousand dollars were thus raised, and the money expended in building the steamer. Thirteen twentieths of the amount were paid by the administrators of the decedent, and .the residue by the other party to the arrangement. Other drafts were afterwards made for the same purpose, so that the administrators paid out of the decedent's estate forty-eight thousand one hundred and twenty-six dollars and twenty four cents, which, with what had been before advanced, fully paid for thirteen twentieths of the steamer when completed.

To the bill as originally framed respondents demurred, and the court sustained the demurrer, but gave the complainant leave to amend upon payment of costs. [Case No. 12,566.] In the amendment the complainant alleged that Chenery and Jessup were citizens of California. He also alleged that the respondents had in some way extinguished their equitable title to the steamer; and those parties, having acquiesced in her sale, were no longer tenants in common with him in the steamer. The respondents alleged that in July, 1854, being in want of a steamer to run .between Boston and St. John, they employed .one William Denning to purchase one for them; that their agent proceeded to New York and entered into a contract with William Vanderbilt, who represented himself as the owner of the steamer, that said Vanderbilt should fit, furnish, and convey the steamer to them. When the steamer was completed Vanderbilt took out a builder's certificate and conveyed the steamer to Denning, who paid for her eighty-eight thousand dollars, money furnished him by the respondents. Conveyance was made to the agent because respondents had not passed the vote authorizing the purchase of the steamer when the conveyance was executed. The steamer was afterwards conveyed to the respondents, September 20, 1854. Respondents alleged that the agent, at the time of the purchase, was wholly ignorant of any claims of decedent on the steamer. and had good reason to believe and supposed that Vanderbilt was her true owner.

Shepley & Dana, for complainant.

The title to thirteen twentieths of the Adelaide, as belonging to the estate of J. Van Pelt, may be established without proof of any bill of sale or written document. And a registry and bill of sale are not conclusive. Title may be acquired by building or purchase. Abb. Shipp. (5th Am. Ed.) 1–6; 3 Kent, Comm. 150; Story, Partn. § 417; Colson v. Bonzey, 6 Greenl. 474; Badger v. Bank of Cumberland, 26 Me. 428; Richardson v. Kimball, 28 Me. 463; Holmes v. Sprowl, 31 Me. 75; Barnes v. Taylor, Id. 334; Mitchell v. Taylor, 32 Me. 437; Bixby v. Franklin Ins. Co., 8 Pick. 86; Lord v. Ferguson, 9 N. H. 380; Weston v. Penniman [Case No. 17,455]; D'Wolf v. Harris [Id. 4,221]. No legal title of thirteen twentieths of the Adelaide has passed from the estate of John Van Pelt to the defendants. "The general rule is, that no person can convey who has no title; and the mere fact of possession by the vendor is not of itself sufficient to give title." 3 Kent, Comm. 130, 131; Williams v. Merle, 11 Wend. 80. The general rule is not denied, that under a contract for building an entire vessel, no property vests in the party for whom she is built, until she is ready for delivery, and has been approved or accepted by him. Mucklow v. Mangles, 1 Taunt. 318; Stringer v. Murray, 2 Barn. & Ald. 248; Merritt v. Johnson, 7 Johns. 473; Abb. Shipp. (5th Am. Ed.) pp. 1–6. This general rule does not prevail when a vessel is built under superintendence from the party for whom she is built, and payments for her are made by instalments as the work progresses. In such case the person for whom she is built is the owner. Woods v. Russell, 5 Barn & Ald. 942; Atkinson v. Bell, 8 Barn. & C. 277; Clarke v. Spence, 4 Adol. & E. 448; Laidler v. Burlinson, 2 Mees. & W. 602; Chit. Cont. (6th Am. Ed.) 378, 379. A written agreement that one shall have a part of a vessel then building when completed passes no title. Bonsey v. Amee, 8 Pick. 236. If the court should consider that the defendants have acquired a legal title to the thirteen twentieths of the Adelaide, that title was held by the vendor in trust; and it continues to be chargeable with the same trust as held by the defendants, they not being purchasers for value, without notice. Vanderbilt held whatever title he had in trust. The legal title to a vessel may be in one person and the equitable interest in another. Weston v. Penniman [Case No. 17,455]. Notice to an agent is notice to his principal. Com. Dig. tit. "Chancery," p. 719, 4 C 5; Maddox v. Maddox, 1 Ves. Sr. 62; Fulton Bank v. Canal Co., 4 Paige, 127; Bank of Alexandria v. Seton, 1 Pet. [26 U. S.] 309. A purchaser with notice is bound in all respects as his vendor was. Taylor v. Stibbert, 2 Ves. Jr. 437. Whatever puts a party on further inquiry is sufficient notice in equity. Com. Dig. tit. "Chancery," p. 717, 4 C 2; Smith v. Low, 1 Atk. 489; 2 Sugd. Vend. (10th Eng. Ed.) 471, 472; Jackson v. Rowe. 2 Sim. & S. 472; Kennedy v. Green, 3 Mylne & K. 719, 721, 722; Jones v. Smith, 1 Hare, 43; Booth v. Barnum, 9 Conn.

286; Pitney v. Leonard, 1 Paige, 461; Hawley v. Cramer, 4 Cow. 717; Carr v. Hilton [Case No. 2,437]; Williamson v. Brown [15 N. Y. 354].

B. R. Curtis and H. C. Hutchins, for respondents.

The respondents purchased the steamboat of Vanderbilt, and paid her fair and full value. Vanderbilt had possession and the record title. Respondents therefore took the legal title. This bill can be maintained on this ground only, otherwise complainant's remedy is at law. If Vanderbilt held his title subject to a trust, the complainant, to maintain this bill, must affect respondents with notice of that trust. No express notice will be claimed, and no implied notice is proved by the testimony. To constitute implied notice of a trust of this character, the evidence must be sufficient to show fraud on the part of the respondents. Jones v. Smith, 1 Hare, 43. Van Pelt's interest, if any, was to be kept secret; and since his death, no one has changed this arrangement. Having thus clothed Vanderbilt with title, Van Pelt and his representatives are estopped from setting up any claim to the vessel. Pepper v. Haight, 20 Barb. 429.

Shepley, in reply.

Ordinary prudence is required of the purchaser respecting the title of the seller. Hill v. Simpson, 7 Ves. 170. The purchaser must in equity be fixed with all the knowledge which it was reasonable that he should acquire, and he is bound to use due diligence in the investigation of the title. Jackson v. Rowe, 2 Sim. & S. 472. Whatever notice is enough to excite attention, and put the party upon his guard, and call for further inquiry, is notice of everything to which such inquiry might have led. Kennedy v. Green, 3 Mylne & K. 719; Carr v. Hilton [supra]. When it appears that a purchaser must have had a suspicion of the truth, and that he designedly avoided to receive actual notice, he is to be regarded as having notice. Jones v. Smith, 1 Hare, 43. When a trust is established, equity will follow the legal title, and decree that those in whom it is vested shall execute the trust. "An abuse of trust can confer no rights on the party abusing it, nor on those who claim in privity with him." Taylor v. Plumer, 3 Maule & S. 574. Notice of a trust makes a person a privy. Com. Dig. tit. "Chancery," p. 716, 4 C 1. As to the general proposition. Id. p. 748, 4 I 4; Bovey v. Smith, 1 Vern. 149; Adair v. Shaw, 1 Schoales & L. 243; Bank of Alexandria v. Seton, 1 Pet. [26 U. S.] 299; 2 Story, Eq. Jur. §§ 976, 1257.

CLIFFORD, Circuit Justice. Most of the facts respecting the title of the complainant as alleged in the bill of complaint are substantially and satisfactorily established by the evidence. Thirteen-twentieth parts of the steamer were built from moneys furnished by the decedent or procured from credits provided by him in his lifetime, and were adjusted and paid by his administrators as legal debts against his estate. Full proof is exhibited that the draft of the steamer was prepared by Vanderbilt as the agent of the decedent, and as such he went to New York to make the contracts for the building of the same and to superintend her construction. Twenty thousand dollars were advanced by the decedent towards the enterprise in his lifetime, and he and Chenery procured a letter of credit from Page Bacon & Co. for fifty thousand dollars for the same purpose. Forty-eight thousand one hundred and ninety-four dollars and fifty-seven cents were obtained on the letter of credit; and the accounts settled in the probate court show that the whole amount was paid by the administrators of the decedent to redeem the property pledged as security for the letter of credit. When Chenery agreed to take seven-twentieth parts of the steamer, he assumed that proportion of the moneys first advanced, so that the whole amount paid by the decedent and by his administrators from his estate was sixty-one thousand one hundred and ninety-four dollars and fifty-seven cents; and the evidence satisfactorily shows that the amount thus advanced fully paid for thirteen-twentieth parts of the steamer when completed and furnished. Vanderbilt had no interest in the steamer, and never made any advances toward her construction, except what had been adjusted and refunded to him by David P. Vail, the agent of the owners, long before the steamer was completed. He left certain bonds and notes with the decedent in his lifetime for collection, amounting to the sum of four thousand dollars, but they proved to be worthless, and remained with the papers of the estate for his benefit. All the contracts for building the steamer were made by him in his own name, but the evidence clearly shows that in all these transactions he was in point of fact the agent of the decedent, from whom or from whose estate all the funds were received, except what was advanced by the owner or owners of the other seven-twentieth parts of the steamer which is not claimed by the complainant. After the arrangement was made with Chenery, as alleged in the bill of complaint, he and the decedent sent David P. Vail to New York to superintend the completion and furnishing of the steamer, and to close up the concern, pay the accounts, and navigate her to California. That arrangement was made at Sonoma in the state of California, where the decedent was then sick, and was to the effect that Chenery should take seven-twentieth parts of the steamer for himself and Jessup, as stated in the bill of complaint, and that he should have the agency of the whole matter. He

adjusted and paid Vanderbilt for all of his services and advances in the premises, and the latter wrote to one of the heirs of the estate that his claims in that behalf were all paid, and that he had passed everything over to the new agent, and had "nothing more to say about the boat." That communication was dated on the 5th of July, 1854, and from that time to the time when the steamer was completed, it is clear, from all the evidence, that whatever he did in the premises was done in subordination to the new agent. Without entering more into detail, suffice it to say that the evidence is full and clear that thirteen-twentieth parts of the steamer were built from moneys and credits furnished by the decedent in his lifetime, and that both Vanderbilt and Vail were mere agents of the party or parties interested in the completion of the work. According to the statement of Vanderbilt, his agreement with the decedent was made at San Francisco, about the 1st of May, 1853, but the evidence tends to show that it was made somewhat later. He made contracts in his own name for the building of the hull and engine, and for the carpenter and joiner work, and for the painting of the vessel. All of the contracts, except that for the building of the hull, provided for performance to his satisfaction; and the payments were to be made at different times, as the work was done. By the terms of the first-named contract, the hull was to be completed in four months from the 7th of July, 1853; and the evidence shows that the vessel was launched and delivered to Vanderbilt in December following. After being delivered, she was taken to New York, and in a few days subsequently to her arrival there the proper contractors commenced to put in her engines. Vanderbilt states expressly that she was delivered to him on the day she was launched, and that she was ready for sea and made a trial trip in April or May, 1854, but was not then finished. More than fifty-six thousand dollars were expended in her construction and equipment, in addition to the sum of twenty thousand dollars paid to the builders of the hull. On the 7th of April, 1854, four months after the builders of the hull had delivered her to Vanderbilt, without reservation or condition, he took from them a bill of sale of the whole steamer, in consideration of twenty thousand dollars as therein expressed, with covenants of general warranty applicable to the whole interest and value of the steamer. When that bill of sale was given no builder's certificate had been filed in the custom-house, but on the 22d of May following the builders of the hull filed in that office a certificate in the usual form, certifying that the steamer had been built by them at Greenport, in 1854, and that she was owned by William W. Vanderbilt. At whose request that certificate was made does not appear, but on the 9th of Septem-

ber following Vanderbilt had the steamer enrolled in his own name, and on the same day he and Vail made the conveyance to the agent of the respondents in pursuance of a prior contract, as alleged in the bill of complaint. On this state of facts, and by virtue of the instruments above mentioned, it is insisted by the respondents that William W. Vanderbilt was the sole owner of the steamer, and that their agent acquired a full and perfect title to the whole of the interest now claimed by the complainant. To that proposition I cannot assent, for several reasons.

It is clear that the builders of the hull, at the time they conveyed to Vanderbilt, had no title or interest in the steamer. By the contract under which they built the hull, they were to be paid by instalments as follows, to wit, five thousand dollars when the keel was laid, five thousand dollars when the vessel was in frame, five thousand dollars when she was planked and her deck laid, twenty-five hundred dollars when she was ready to be launched, and the balance of twenty-five hundred dollars when the carpenter work was finished. Having received those several sums at the times they respectively fell due, in full compensation for their services, and delivered the steamer without reservation or condition, it is quite evident that they retained no interest whatever in the vessel which they could convey to any one. They built the hull only, and never had any title or claim in the entire vessel. Fifty-six thousand dollars in addition to the contract price of the hull had been expended upon the vessel before the sale to the respondents. Nothing can be plainer from the evidence than the proposition that the builders of the hull never owned the entire vessel. Beyond question, the general rule of law is, that under a contract for building an entire vessel no property vests in the party for whom she is built until she is ready for delivery, and has been accepted or approved by such party. Mucklow v. Mangles, 1 Taunt. 318; Stringer v. Murray, 2 Barn. & Ald. 248; Merritt v. Johnson, 7 Johns. 473; Abb. Shipp. 473. But that general rule does not prevail where the vessel is constructed under the superintendence of the party for whom she is built, or his agent; and payments for her, based upon the progress of the work, are to be made by instalments as the work is done. In such cases the person for whom the vessel is built is regarded as the real owner by all the well-considered decisions upon the subject. Woods v. Russell, 5 Barn. & Ald. 942; Atkinson v. Bell, 8 Barn. & C. 277; Clarke v. Spence, 4 Adol. & E. 448; Laidler v. Burlinson, 2 Mees. & W. 602. Mr. Chitty says, where the contract provides that the article shall be manufactured under the superintendence of a person appointed by the purchaser, and also fixes the payments by instalments regulated by particular stages in the progress of the work, the general property in the materials vests in the purchaser at the time when they are used, or

at all events as soon as the first instalment is paid. Chit. Cont. (7th Am. Ed.) 378, 379. All the cases agree that where the contract has been completed, and the vessel has been finished and delivered to the party for whom she was built, and has been approved by him, the property vests in such party. Andrews v. Durant, 1 Kern. [11 N. Y.] 40. Assume the more restricted rule, as last stated, to be the more correct one, still it is broad enough to show that the builders of the hull in this case had parted with all claim of title four months before the date of their bill of sale to Vanderbilt.

By that delivery Vanderbilt acquired no interest in the steamer for the reason that in accepting it he acted as the agent of the party or parties who furnished the means to pay the consideration. He took no written conveyance at the time, and the whole case shows that he did not then contemplate any fraud upon the rights of those he represented in accepting the delivery. His services and claims were all subsequently paid by the new agent, and in July, 1854, he expressly declared that he had nothing more to say about the boat. Delivery to him as agent of the real owners could not of itself vest any title in him, although the builders of the hull had no knowledge as to the capacity in which he was acting. Unaccompanied by any written conveyance, and with no intent on his part to appropriate the property to his own use, such delivery of the vessel to him as agent of the party or parties for whom it was in fact built must be understood as vesting the title in the real owners, and his subsequent act in taking the bill of sale from the builders four months afterwards could not have the effect to divest such owners of the title and vest it in him as their agent. In the opinion delivered by Mr. Justice Curtis at the hearing on the bill of complaint, he proceeded upon the ground that the legal title was in Vanderbilt, and that it passed to the agent of the respondents under the bill of sale executed by him and Vail. But that opinion was given upon the case as then exhibited in the bill of complaint, without any knowledge of the facts since disclosed in the evidence. Unlike what was then exhibited, it now appears that the claims of Vanderbilt had been fully settled and satisfied, and that he had expressly disclaimed all interest in the steamer. He and Vail combined together, took out the builder's certificate in the name of the former, obtained the enrolment in his name as sole owner, and jointly conveyed the steamer to the agent of the respondents. Instructions undoubtedly were at one time given to Vanderbilt by the decedent to have the steamer enrolled in his name; and it is equally certain that other instructions were subsequently given designating other parties as part owners, but all of those instructions were superseded when the new agent was sent to New York to close the accounts and navigate the steamer to California. No such instructions were ever given to the new agent, and if those previously given to Vanderbilt were not expressly superseded, it must be considered that they were terminated at the death of the decedent. At most, the builder's certificate and the enrolment are only evidence of title, but under the circumstances of this case they are not conclusive evidence. Title may be acquired by building or by purchase, and it may be established, especially when acquired in the former mode, without the exhibition of any bill of sale or other written evidence. In the United States it is well settled that at common law the title of a vessel may pass by delivery under a parol contract. Bixby v. Franklin Ins. Co., 8 Pick. 86; U. S. v. Willings, 4 Cranch [8 U. S.] 55; Badger v. Bank of Cumberland, 26 Me. 428; Wendover v. Hogeboom, 7 Johns. 308; Vinal v. Burrill, 16 Pick. 401; Leonard v. Huntington, 15 Johns. 298; Thorn v. Hicks, 7 Cow. 699; Fontaine v. Beers, 19 Ala. 722; Pars. Merc. Law, 329; Colson v. Bonzey, 6 Me. 474; Richardson v. Kimball, 28 Me. 463; Holmes v. Sprowl, 31 Me. 75; Barnes v. Taylor, Id. 334; Mitchell v. Taylor, 32 Me. 437; Stacy v. Graham, 3 Duer, 452; Lord v. Ferguson, 9 N. H. 380; Weston v. Penniman [Case No. 17,455]. Registry acts are to be considered as forms of local or municipal institutions for purposes of public policy. They are imperative only, says Chancellor Kent, upon voluntary transfers of the parties, and do not in general apply to transfers by act or operation of law. 3 Kent, Comm. (9th Ed.) 208. Of itself, the register, it is said, is not evidence of property, unless it be confirmed by some auxiliary circumstance, to show that it was made by the authority or the assent of the person named in it, and who is sought to be charged as owner. Without such proof, doubts have been expressed whether it is even prima facie evidence of ownership. U. S. v. Brune [Case No. 14,677]; Tinkler v. Walpole, 14 East, 226; M'Iver v. Humble, 16 East, 169; Fraser v. Hopkins, 2 Taunt. 5; Sharp v. United Ins. Co., 14 Johns. 381; 1 Greenl. Ev. § 494; Ring v. Franklin, 2 Hall, 1. Upon the same ground and for the same reasons it is competent for the real owner, who claims as builder, to show by parol evidence that his claim is well founded, and that the builder's certificate and registry or enrolment have been fraudulently made and issued in the name of another. Such fraudulent acts cannot confer any interest in the vessel, and if not, a claimant whose title has no other foundation for support cannot convey a good title as against the real owner or his legal representatives, even to a purchaser without notice. Williams v. Merle, 11 Wend. 80; Everett v. Coffin, 6 Wend. 609; Prescott v. De Forest, 16 Johns. 169. But suppose it were otherwise, and that the legal title to the steamer was in Vanderbilt at the time he and Vail gave the bill of sale to the agent of the respondents, still the complainant in this case is entitled to recover, as Vanderbilt, in that view of the case, held the title in trust for the real owners. A purchaser with notice of the trust stands in no better situa-

tion than the seller. By the well-settled rules of law, the legal title to a vessel may be in one person and the equitable interest in another. 3 Kent, Comm. (9th Ed.) 151; Weston v. Penniman [Case No. 17,455]; Ring v. Franklin, 2 Hall, 10; 1 Pars. Merc. Law, 328. Notice to the agent is notice to the principal. That rule of law, as applicable to the facts of this case, is too obvious and too well settled by authority to require any argument in its support. Com. Dig. tit. "Chancery," p. 719, 4 C 5; Maddox v. Maddox, 1 Ves. Sr. 62; Fulton Bank v. New York & S. Canal Co., 4 Paige, 127; Bank of Alexandria v. Seton, 1 Pet. [26 U. S.] 309. Purchasers with notice are bound in all respects as their vendors were, and have no greater right. Taylor v. Stibbert, 2 Ves. Jr. 437.

Ordinary prudence is required of the purchaser, and whatever fairly puts a party on further inquiry is in general sufficient notice in equity. Jones v. Smith, 1 Hare, 43; Hill v. Simpson, 7 Ves. 170; Smith v. Low, 1 Atk. 489; 2 Sugd. Vend. 471; Booth v. Barnum, 9 Conn. 286; Pitney v. Leonard, 1 Paige, 461. Notwithstanding that principle is well settled, still it is unnecessary in this case to invoke its aid, for the reason that the facts and circumstances in proof show, to the entire satisfaction of this court, that the agents of the respondents had full knowledge at the time of the sale that the steamer was built for parties in California; and I am also of the opinion that they were informed that the steamer was about to be claimed by those to whom she belonged, and that they hastened her departure from New York so that such claim might not be successfully made.

One other question only remains to be considered. It was insisted by the opening counsel for the respondents, that, in this view of the case, the remedy of the complainant was at law, and not in equity. That suggestion was based upon the assumption that one tenant in common may maintain an action at law against the purchaser of the common property from his cotenant, in the absence of any conversion of the property or proof of its destruction. But the senior counsel very properly conceded that the law is otherwise, and that under such circumstances the action at law could not be maintained. Considering the law to be well settled as conceded by the senior counsel, further examination of the point is deemed unnecessary. Lord v. Tyler, 14 Pick. 163; Wills v. Noyes, 12 Pick. 326; Dain v. Cowing, 22 Me. 347. In view of the whole case, I am of the opinion that the complainant is entitled to a decree to compel the respondents to make the conveyance as prayed in the bill of complaint, and for an account of the net earnings of the steamer since the purchase. In order to ascertain the amount of the net earnings, the cause must be referred to a master.

[The decree entered in this case was, upon appeal by the defendants to the supreme court, reversed. 2 Black (67 U. S.) 372.]